IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 08-342 |
| | ) |
| MICHAEL WISE | ) |

## OPINION

Defendant Michael Wise is charged with one count of possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2552(a)(4). On January 29, 2008, Defendant's residence was searched by Detective Robert W. Weaver of the Westmoreland County District Attorney's Office, Detective Bureau pursuant to a Commonwealth of Pennsylvania search warrant issued by Westmoreland County District Judge Joseph DeMarchis. Seized during the search was, inter alia, Mr. Wise's computer equipment. Presently before the Court is Defendant's Motion to Suppress Evidence, and the government's response thereto. For the reasons that follow we will deny Defendant's motion to suppress evidence.

### I. Applicable Law

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted)), *cert. denied*, 510 U.S. 1177 (1994). The test set forth in Gates requires that the issuing magistrate "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him,

including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant. Id. at 238. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Id. at 236.

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." Conley, 4 F.3d at 1208. A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found." Id. at 1205. Reviewing courts must not "simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983) (*cert. denied sub nom.*, Sanchez v. United States, 466 U.S. 904 (1984)). However, the United States Supreme Court has directed that "resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Conley, 4 F.3d at 1205 (quoting United States v. Ventrusca, 380 U.S. 102, 109 (1965) (quoted with approval in Gates, 462 U.S. at 237 n.10)).

## II. Motion to Suppress Evidence

Defendant argues that the search warrant authorizing the search and seizure of the computer was issued without probable cause in violation of the Defendant's rights under the Fourth Amendment to the United States Constitution. Specifically, Defendant argues that the affidavit of probable cause does not contain facts by which the issuing magistrate could have concluded that evidence of child pornography would be found on the computer; that the information contained in the affidavit was stale and therefore does not establish probable cause to believe that the items to be seized were in the place to be searched when the warrant was

2

issued; and that the authorities have failed to maintain the computer in a manner that would ensure the integrity of the hard drive.

### A. The Affidavit of Probable Cause

On the basis of the information in the affidavit the magistrate concluded that there was probable cause to believe that a variety of different media concerning child pornography, including computers and computer systems, would be found on the premises. The affidavit in support of the application for search warrant was sworn to by Detective Weaver and reveals the following pertinent information.

On January 28, 2008, the Westmoreland County Children's Bureau received a referral in reference to the twelve year old daughter of the Defendant, who spent every other weekend with Defendant. On January 29, 2008, Rebecca Lowandowski, a Children's Bureau employee, informed Detective Weaver about the referral and a subsequent forensic interview with the daughter.

The referral alleged that the Defendant had taken nude pictures of his daughter, and had taken videos of her while she is nude "doing poses and moving around." The referral alleges that the Defendant told his daughter that the pictures and videos were taken so that she could be a model. In addition, the nurse at the daughter's middle school told authorities that the daughter's behavior had changed for the worse in the last year, and that the daughter had told guidance counselors on several occasions that her father wants her to be a model.

Ms. Lowandowski also informed Detective Weaver that Jennifer Schilken, a forensic interviewer with Washington County Children and Youth Services, conducted an interview with the daughter on January 28, 2008. Ms. Schilken believed that the child was credible and

3

reported to Ms. Lowandowski that the daughter offered the following information: her father asked her if she wanted to be a model; he talked about a website; only her father and she were home when he took pictures of her, and he took pictures every time she went there and the two were alone; he took pictures of her in different outfits including lingerie; he told her he needed to take nude pictures to show that she did not have any scars; he took nude pictures of her sitting and standing; he told her not tell anyone about the photographs in case she did not become a model, otherwise she would "look like an idiot"; he used a digital camera and because he did not want his new wife to see the pictures he put them on a disk; he used a camcorder to videotape his daughter; when videotaping her nude he told her to jump up an down "so that they could [see that] her boobs were real"; when she had a discharge from her vaginal area when she was with her father she asked him for a panty liner, and the father then stated that he could fix "the problem" with a vibrator; the father then used a small black vibrator on the child; and the father would use the computer to transfer the pictures from the camera to a disk.

Detective Weaver explained in the Affidavit that he was requesting the search warrant on January 29, 2008, because the child's mother had filed for a Protection from Abuse Order ("PFA") on behalf of her daughter that would be served on the father on January 30, 2008.  The PFA order would contain the same factual allegations as in the search warrant.

Finally, Detective Weaver stated: "Through experience and training your affiant is aware that individuals who possess child pornography do not dispose of it[,] they collect it and save it for the purposes of viewing it and disseminating it to others."

4

**B. Probable Cause to Search the Computer**

Defendant first argues that while the affidavit alleges that nude photographs were transferred from a digital computer to a disk via a home computer, the affidavit does not allege that the photographs "were stored on the computer, would be placed in the computer's memory during transfer, or [would] in any way be retrievable from the computer." (Motion to Suppress Evidence, at ¶ 5.) Defendant therefore concludes that the affidavit of probable cause does not contain facts by which the issuing magistrate could have concluded that evidence of child pornography would be found on the computer.

After consideration of the affidavit and the normal inferences that can be drawn from the affidavit, we conclude that a there was a substantial basis for the magistrate to believe that evidence of child pornography sought in the warrant would be found on Defendant's computer. The type of crime alleged to have occurred is child pornography. The evidence presented in the affidavit, along with the 'normal inferences' that can be drawn from the affidavit, reveals in part that that the Defendant used a digital camera and video camcorder to take nude photographs and pictures of a child, that he talked about a website in reference to the child becoming a model, that he took steps to keep the pictures and videos secret (by only taking photos and video while the two were alone, by announcing that he did not want his new wife to see the photographs, by telling his daughter not to tell anyone about the photographs, and by using a computer to transfer the pictures from a computer to a disk), and that he repeatedly took video and photographs on different occasions.

This evidence abundantly establishes a substantial basis for the magistrate to believe that evidence of child pornography would be found on the defendant's computer. It is a minor

5

inferential leap to conclude that a person alleged to be actively and repeatedly producing child pornography using electronic devices that are meant to be connected to a computer (and that he had actually used a digital camera to connect to a computer) would also store the child pornography on his computer. See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) ("probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inference about where a criminal might hide the fruits of his crime" (internal quotations and citations omitted)); United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) ("'The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'") (citation omitted)).

### C. Staleness

Defendant next argues for suppression claiming that the information contained in the affidavit was stale and therefore does not establish probable cause to believe that the items to be seized were in the place to be searched when the warrant was issued. Specifically, Defendant claims that the affidavit is devoid of information relating to when the photographs were taken or when the computer was used to transfer the photographs to a disk. He further argues that without a reference as to when these actions occurred there is no basis to conclude that any images would be on the computer, or if the computer itself was even in the Defendant's residence. (Motion to Suppress Evidence, at ¶ 11.) Defendant also challenges Detective Weaver's statement that in his experience and training he "is aware that individuals who possess child pornography do not

dispose of it[,] they collect it and save it for the purposes of viewing it and disseminating it to others" as "merely a boilerplate recitation of the habits of child pornography collectors without establishing facts by which one could determine that the defendant was a child pornography collector." (Motion to Suppress Evidence, at ¶ 12.)

As explained by the United States Court of Appeals for the Third Circuit in United States v. Harvey, 2 F.3d 1318 (3d Cir. 1993:

> [a]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

Id. at 1322 (internal quotations and citations omitted).

We have no trouble finding that the age of the information in the affidavit in this case was not stale. On the Application for Search Warrant, Detective Weaver stated that the dates of violation in this case were "2007 to the Present." Thus, the normal inference from this statement is that the Defendant's conduct is contemporaneous with the application for a search warrant.

The factual allegations in the Affidavit, along with the normal inferences that can be drawn from the allegations, likewise demonstrate that the alleged crimes were presently occurring. The Defendant took pictures of the child every time she visited and she visited every other weekend. Thus the conduct was occurring on a regular basis over time, specifically every other weekend. This is not stale information.

In addition, it can be inferred from the evidence that the conduct was occurring recently based on the allegations that demonstrate that Defendant's daughter was at or near her age of twelve. When videotaping her nude, Defendant told her to jump up an down "so that they could

7

[see that] her boobs were real." She also had a discharge from her vaginal area and asked for a a panty liner. This evidence shows that the child was sexually developing consistent with her age at the time of the allegations, rather than at some time in the past before she had matured.

The affidavit also states that the child's mother had filed for a Protection from Abuse Order on behalf of her daughter that would be served on the father the following day. This suggests that the mother viewed the conduct as presently occurring as she wanted to protect her daughter from Defendant immediately.

Finally, the nurse at the daughter's middle school told authorities that the daughter's behavior had changed for the worse in the last year. The child was attending middle school at the time of the search warrant; therefore this evidence is also consistent with conduct that is occurring from "2007 to the Present."

Viewing the type of crime alleged to have occurred along with the evidence in the affidavit and the inferences to be drawn from such evidence, we conclude that the information in the affidavit was not stale.

Defendant also argues that the expert opinion contained in the affidavit cannot establish probable cause because the opinion was boilerplate language not tailored to the specific facts of this case and does not establish that this Defendant is a collector of pornography. See United States v. Zimmerman, 277 F.3d 426 (3d Cir. 2002). The Zimmerman case involved adult pornography, not child pornography. In determining that the affidavit of probable cause in that case was stale, the Zimmerman Court repeatedly emphasized that it was addressing a situation where adult pornography, and not child pornography, was involved. For example, the

Zimmerman court distinguished its case from that an earlier Ninth Circuit court opinion, United States v. Lacy, 119 F.3d 742 (9th Cir. 1997):

> [i]n Lacy, the Court held that ten-month old information was not stale. Lacy, however, is readily distinguishable from this case. First, of course, Lacy involved child pornography. Thus, the [Lacy] Court placed significant weight on expert opinion indicating that collectors of child pornography rarely if ever dispose of such material and store it for long periods in a secure place, typically in their homes. As discussed, nothing indicates that this logic applies in the adult pornography context." Id. at 435.

The Zimmerman Court also stated:

> [i]n conducting our staleness analysis in Harvey, we also pointed to the fact that pedophiles rarely, if ever, dispose of child pornography. Many courts have similarly accorded weight to that fact. See, e.g. United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997); United States v. Peden, 891 F.2d 514, 518-19 (5th Cir. 1989). Presumably individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain.

Id. at 434. Thus, contrary to the Defendant's position, we find that inclusion in an Affidavit of Probable Cause of expert opinion on the behavior of pedophiles is proper in child pornography cases, even if the expert opinion is not tailored to the specific facts of the case.

### D. Chain of Custody of the Computer

Finally, Defendant argues for suppression of the evidence based on his allegation that the authorities have failed to maintain the computer in a manner that would ensure the integrity of the hard drive. Defendant provides no basis to support his allegation that the integrity of the hard drive in this case has been compromised. We agree with the government that this motion is premature. In addition, the government avers that it has, as it routinely does in such cases, made an exact copy of the hard drive by imaging it to a separate hard drive. The forensic analysis is then performed on the imaged drive while the original remains

9

untouched. The government maintains that Defendant will have an opportunity to compare the original to the copy prior to trial. Therefore, we will deny this motion as premature.

### III. Conclusion

For the reason stated above we will deny Defendant's Motion to Suppress Evidence. An appropriate Order follows.

AND NOW, this __6th__ day of April, 2010, it is hereby ORDERED, ADJUDGED and DECREED that Defendant Michael Wise's Motion to Suppress Evidence be and hereby is DENIED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge

10